## BIVENS v STATE OF FLORIDA

Case No. 89-0023-AC A02 and Case No. 89-0063-AC A02 (County Court Case No. 88-16975-MM A02

Fifteenth Judicial Circuit, Palm Beach County

March 14, 1990

### APPEARANCES OF COUNSEL

**Louis G. Carres, Esquire,** Assistant Public Defender, for appellant.

**Robert S. Jaegers, Esquire,** Assistant State Attorney, for appellee.

Before CARLISLE, COHEN, SHOLTS, JJ.

### OPINION OF THE COURT

CARLISLE, J.

The parties are at loggerheads over the issue of whether turtle eggs are "units of marine life" under Section 371.021(2)(c)(5) Florida Statutes.

Appellant pled no contest to possession of turtle eggs and was sentenced to a $500.00 fine and a term of sixty days in jail. The court also imposed a fine under the above section of $100.00 per egg. Appellant was in possession of 1,088 eggs.

Appellant believes the turtle eggs were not "unit(s) of marine life," or "part thereof."

The statutory scheme is hardly a model of legislative clarity. Section 370.12 F.S. prohibits possession of any marine turtle "eggs." 370.021 F.S. is the penalty section which provides upon a first conviction for imprisonment of not more than sixty days and/or a fine of not less than $100.00 nor more than $500.00. On second or subsequent convictions within twelve months the statute provides for 6 months imprisonment and/or fines of not less than $250.00 nor more than $1,000.00. Subsection (c) provides additional penalties for certain named "major violations." Subsection (5) provides in pertinent part as follows:

"For a violation involving the taking, harvesting or possession of any of the following species, which are endangered, threatened or of special concern;

. . .

(d) Atlantic Loggerhead turtle . . .,

(e) Atlantic Green turtle . . .,

(f) Leatherback turtle . . .,

(g) Atlantic Hawkesbill turtle . . .,

(h) Atlantic Gridley turtle. . .,

. . .

An additional penalty of $100.00 for each unit of marine life or part thereof."

Appellant contends that since the Legislature referred in Section 370.12 F.S. specifically to "marine turtle eggs" it would have said "egg" rather than "unit of marine life" if it intended the additional penalty be imposed for possession of turtle eggs. Appellant asserts that "unit of marine life" refers to the specific species mentioned in Section (5) but not their eggs. Appellant contends that each "unit of marine life or part thereof" would authorize a $100.00 fine for the possession of one of the named turtles or any part of a turtle.

The southeastern Atlantic coast of North America is probably the largest Loggerhead rookery in the world. Marine turtles were once abundant in Florida. A number of circumstances caused the Legislature to consider them endangers. Minorcans migrated to St. Augustine in the late 1700s. They had a scanty existence along the Florida coast and a staple of their diet was marine turtle eggs. During the Depression, it was said that three things kept the people alive in St. John and

Flagler counties: Gopher tortoises, mullet, and turtle eggs. Floridians developed a taste for the eggs. The eggs are considered superior to chicken eggs for baking purposes. Turtle egg pancakes and waffles were featured in restaurants near St. Augustine. Bakeries built reputations on them, and employed their own egg hunting trucks and hunters to gather the eggs. Thousands of eggs were shipped to the gourmet market.

The reputation turtle eggs have as an aphrodisiac also contributes to their peril causing men to risk fine and imprisonment to harvest eggs. Crabs and raccoons savage the nests and destroy the eggs. But man is a far superior predator. Redlow, *Time of the Turtle*, Chapter 4, pg. 38, et seq., E. P. Dutton.

The Legislature labelled marine turtles an endangers species and has endeavored to protect them. Obviously the protection of the eggs and nesting sites are vital to their preservation. Subjectively the Legislature intended to include eggs within the term "unit of marine life."

While legislative intent is a guide to the construction of statutes, an unexpressed intent cannot be recognized unless it can be fairly red into the language used. But if that intent can be fairly red into the language used, it must be recognized.

The slough and detritus of the animals cannot be considered a unit of life. Turtle dandruff, if such there be, is no more a unit of turtle life than a discarded snake skin is a python. Between 80% and 90% of marine turtle eggs deposited are fertile. Ehrhart, *A Review of Sea Turtle Reproduction,* Proceedings of the World Conference on Sea Turtle Conservation, Washington, D.C., 26-30 Nov. 1979, page 35, Smithsonian Institution Press. See also Rebel, *Sea Turtles and the Turtle Industry of the West Indies, Florida, and the Gulf of Mexico,* pg. 104, 105, Rev. Edition University of Miami Press. We conclude, therefore, that marine turtle eggs are units of marine life within the meaning of Section 370.021 F.S. and that the Legisature so intended.

The Legislature in the case of the marine turtle, however, has seen fit to provide protection to marine turtle eggs from the time they are deposited, if not from fertilization. There are no competing constitutional rights. No one can claim a constitutional right to turtle eggs or any of the real or legendary benefits associated therewith.

We affirm.

COHEN, SHOLTS, JJ - concur.